UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ____1/6/2016____
```

---

ELVIS HIBBERT and YVENER LOUIS,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

               vs.

CENTRAL PARKING SYSTEMS, INC.,

               Defendant.

12-CV-7970 (VSB)

---

ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL CERTIFICATION
OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND
APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

     Plaintiffs Elvis Hibbert and Yvener Louis ("Named Plaintiffs") initiated this Action

against Defendant on October 25, 2012 pursuant to Federal Rule of Civil Procedure 23

("FRCP"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and the

New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL").  Plaintiffs'

pleading alleged hybrid collective and class action claims on behalf of themselves and others

who are similarly situated (the "Plaintiffs").  *See* Davis Decl. ¶ 3[1]; *see also* Dkt. No. 1.  Plaintiff

Hibbert worked as a salaried, non-union Business Unit Manager at the Central Parking System

valet garage facility located at the Time Warner Center in Manhattan, New York.  *Id.* ¶ 5.

---

[1] "Davis Decl." refers to the Declaration of Christopher Q. Davis in Support of Plaintiffs' Unopposed Motion for
Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA
Settlement.  Dkt. No. 69.

Plaintiff Louis worked as a salaried, non-union Assistant Manager at the Central Parking System valet garage facility located at the Time Warner Center in Manhattan, New York.  *Id.*  Plaintiffs alleged that they and similarly situated Central Parking System employees, throughout the United States, employed or previously employed as non-union, salaried, facility-based Facility Supervisors, Assistant Managers, Night Foremen, Project Managers, and Business Unit Managers were not properly classified as exempt and were not paid overtime wages for hours worked over 40 per week.  *Id.*

The lawsuit sought, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under FRCP 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs.  *Id.* ¶¶ 3, 6.  On December 11, 2012, Defendant filed its Answer.  *Id.*  On March 22, 2013, Plaintiffs filed their First Amended Complaint (the "Amended Complaint"), Dkt. No. 16, which the Defendant responded to on April 19, 2013 by filing an Answer.  Davis Decl. ¶ 4.  Following the September 18, 2013 pre-trial conference, the Parties expressed their interest in the potential to resolve the matter during a formal mediation.  *Id.* ¶ 11.  In October 2013, the Parties entered into a Confidential Mediation Agreement.  *Id.* ¶ 12.  In November 2013, Plaintiff Lacroix Contant ("Contant") became involved in this litigation.  *Id.* ¶ 7.  Contant signed a retainer agreement with Christopher Davis; however, for purposes of adhering to the parties' confidential Mediation Agreement he has not formally joined this action by filing an opt-in form.  *Id.*  Contant was employed as a non-union, salaried Facility Manager at the Central Parking System valet garage facility located at West 58th Street, Manhattan, New York.  *Id.* ¶ 8.  Contant previously entered into a Severance Agreement releasing his non-FLSA claims against the Defendant, for which he received consideration in the amount of twelve weeks' salary.  *Id.* ¶ 9.

Pretrial conferences were held before District Court Judge William H. Pauley, III on March 15, 2013, September 18, 2013 and December 16, 2013. *Id.* ¶ 10. The case has since been reassigned to me. *Id*. With respect to pre-notice fact discovery, Plaintiffs propounded 203 individual document requests, while Defendant propounded 36 individual document requests and 17 interrogatories for each of the Lead Plaintiffs. *Id.* ¶ 13. Defendant produced over 88,000 pages of documents, including pay stubs, handbooks, training materials, performance evaluations, organizational charts, and emails sent and received by Named Plaintiff Elvis Hibbert, Regional Manager Jose Alvarez and Senior Manager Sammy Checo, containing agreed upon search terms. *Id.* ¶ 14. Defendant also provided Plaintiffs with a class list of the approximately 175 non-union, salaried, Business Unit Managers, Facility Managers, and Assistant Managers employed at CPS parking facilities in the New York/New Jersey metro area. *Id.* ¶ 16. Plaintiff retained a hosted document management service provider to securely maintain Plaintiff's document database, which was located in Salt Lake City, Utah and was remotely viewed by Plaintiffs' attorneys in New York City during the litigation. *Id.* ¶ 15.

Plaintiffs deposed three corporate witnesses and two non-party witnesses who are or were employed by Central Parking System in the Boston Region. *Id.* ¶ 17. Plaintiffs' counsel conducted an investigation to identify and locate the two non-party witnesses who live and work in the Boston area. *Id.* ¶ 18. Class Counsel then travelled to Boston to take their depositions. *Id.* Defendant deposed the two Named Plaintiffs and Contant. *Id.* ¶ 19. Together the parties deposed eight non-party witnesses who are Business Unit Managers, Facility Managers, and Assistant Managers, and each work at a different CPS facility in the New York Region. *Id.* ¶ 20.

Plaintiffs' Counsel assisted with the preparation of the complaints, the factual investigations of claims, and in preparing for settlement negotiations and mediation. *Id.* ¶ 21.

Plaintiffs' Counsel also conducted legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to "misclassification" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendant's anticipated defenses, and Plaintiffs' damages. *Id.* ¶ 22.

Through investigation and discovery, Plaintiffs narrowed the scope of the class definition and limited class membership to those Class Members in Assistant Manager or Assistant Supervisors or Night Foremen positions ("Assistant Managers"). *Id.* ¶ 24. Named Plaintiff Yvener Louis shared the same job title as the other Class Members and the same job duties, and was subject to the same employment handbooks and policies governing their performance, and policies regarding payment for overtime hours worked. *Id.* ¶ 25. While contested by Defendant, Plaintiffs' Counsel avers that its investigation revealed that Plaintiffs were subject to the same alleged unlawful practice, namely, that Defendant failed to properly pay them lawful overtime wages, for hours worked over forty (40) per week, based on the common practice of classifying them as overtime-exempt. *Id.* ¶ 26. Similarly contested by Defendant, Plaintiffs' Counsel asserts that its investigation revealed that Named Plaintiff Louis and the Class Members were subject to Defendant's alleged common policy of requiring them to work over forty hours per week, while failing to keep accurate records of time worked. *Id.* ¶ 27. The parties agreed to an all-day mediation, to be held on April 25, 2014, under the direction of mediator Ruth Raisfeld, Esq., a neutral and experienced class and collective action mediator. *Id.* ¶ 32. Plaintiffs' Counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the Named Plaintiffs and Plaintiff Contant for the mediation, reviewing the

necessary data for class-wide calculation of damages, and formulating a mediation demand.  *Id.* ¶ 31.  At the mediation, the Parties were unable to reach an agreement; however, they agreed to continue settlement negotiations.  *Id.* ¶ 33.  After additional settlement meetings between Counsel for both Parties and extensive arms-length discussions via phone, email, and a second in-person settlement discussion, the Parties reached an agreement as to (a) the resolution of class claims for all non-union, salaried, facility-based Assistant Managers and/or Assistant Supervisors or Night Foremen employed within six (6) years of the filing of the Complaint for the New York, New Jersey Settlement Class (anyone based out of Defendant's New York and New Jersey Facilities) and (b) the resolution of class claims for all non-union, salaried, facility-based Assistant Managers and/or Assistant Supervisors or Night Foremen employed within three (3) years of the filing of the Complaint for the Nation Wide FLSA Class (anyone based out of Defendant's Facilities outside of New York, New Jersey, and California).  *Id.* ¶ 34.  The Parties then agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement appended as Exhibit 1 to the Davis Declaration (the "Joint Stipulation," "Settlement," or "Settlement Agreement").  *Id.* ¶ 35.

On August 8, 2014, the Plaintiffs filed an unopposed motion for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed Class Notices.  Dkt. Nos. 42-45.  On January 15, 2015, the Court granted the motion, in part, based on the Joint Stipulation and denied the motion in part, requiring the Parties to submit revised Class Notices.  Dkt. No. 52.  On January 28, 2015, after the Parties submitted revised Class Notices, the Court approved such revised Notices.  Dkt. Nos. 53 and 54.

Defendant's counsel supplied the claims administrator, Simpluris Class Action

Settlement Administration ("Simpluris"), with an electronic file, which represented the list of the names and known contact information for the Class Members.  *See* Salinas Decl. ¶ 4.[2]  The data contained in the electronic file revealed there were 48 Class Members.  *Id.* ¶ 4.  On April 30, 2015, Simpluris caused to be served by First Class U.S. Mail the Notice of Class Action Settlement and Request for Exclusion Form (referred to as the "Notice Packets") to all Class Members.  *Id.* ¶ 7.

Through the Class Notices, all Class Members have been notified of the terms of the settlements and their proposed relief, the allocation formula, the process by which to submit a Claim Form and receive payment under the settlement, the Class Members' right to opt out, Class Counsel's anticipated fees, Class Counsel's expenses, and all Class Members' rights to object to the settlement.  *Id.* ¶ 5; *see also id.* at Ex. A.

One Notice Packet was returned by the United States Postal Service as undeliverable, but Simpluris performed an advanced address search and was able to locate the updated address.  *Id.* ¶ 8.  Simpluris mailed a new Notice Packet to the individual whose packet was returned undeliverable.  *Id.*  All Class Members were located.  *Id.*  Simpluris received no requests for exclusion and no objections to the Settlement.  *Id.* ¶¶ 10-11.

On November 20, 2015, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of FLSA Settlement ("Motion for Final Approval").  *See* Dkt. Nos. 67-69.  The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees").  *See* Dkt. Nos. 70-72.  Defendant did not oppose these motions.[3]  The Court held a fairness

---

[2] "Salinas Decl." refers to the Declaration of Jarrod Salinas Regarding Notice and Settlement Administration, attached as Exhibit 4 to the Davis Decl.  (Dkt. No. 69-4.)

hearing on December 4, 2015, during which counsel responded to my questions, including questions related to the complexity of the litigation.  Having considered the Motion for Final Approval, the Motion for Fees, the supporting declarations, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Approval of the Settlement Agreement and Certification of Class**

1.      The Court hereby grants the Motion for Final Approval, approves the settlement as fair, reasonable, and adequate, and certifies the Class as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

2.      The Class consists of all individuals who were employed by CPS as non-union, salaried, facility-based Assistant Managers, Assistant Supervisors, or Night Foremen employed at any time (a) within six (6) years of the filing of the Complaint for the New York and New Jersey Settlement Class and (b) within three (3) years of the filing of the Complaint for the Nation Wide FLSA Class (anyone based out of Defendant's Facilities outside of New York, New Jersey, and California).

3.      The Rule 23 settlement class meets all of the requirements for certification of a class under Federal Rule of Civil Procedure 23.[4]   Rule 23(a) has four requirements, numerosity, commonality, typicality, and adequacy, each of which are present here.  In the Second Circuit,

---

[3] Class Counsel makes their Fee Application with the consent of their predecessor firm, Stoll, Glickman & Bellina LLP ("SGB").  Class counsel and SGB have agreed on a fee distribution arrangement that was disclosed to the Court on October 27, 2015.  *See* Dkt. No. 61.  Class Counsel and SGB have entered into an agreement regarding the distribution of fees and expenses awarded in this case.  Defendant does not object to this distribution pursuant to Class Counsel and SGB's agreement and to the Court's final decision regarding the distribution, provided that the amounts do not exceed the $140,000 in fees, the $27,523.61 in expenses (not inclusive of settlement administration costs which are to be paid directly from the Gross Settlement Fund), and the amounts provided for in the individual settlement agreements of Elvis Hibbert and Lacroix Contant.

[4] The Rule 23 requirements were discussed on the record on December 4, 2015.

numerosity is presumed at 40 class members, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), and this Class has 48 members, joinder of which would be impractical given the relative size of the claims at issue and the modest financial resources of the Class Members.  In addition, as detailed above, there are numerous common issues of law and fact, including whether the members of the class were misclassified.  Similarly, the typicality requirement is satisfied because each Class Member had the same duties and were subject to the same workplace policies.  Finally there are no indications that the Named Plaintiff, who has fully prosecuted this action to date, is not an adequate representative of the class, nor are there any known conflicts with any Class Member.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).  Additionally, certification is appropriate under Rule 23(b)(3) because common questions of law or fact predominate and because class-wide adjudication is the superior method for adjudicating this controversy.  In particular, the question of whether the Class Members were misclassified as overtime-exempt predominates over any individual issues that may be subject to individualized proof.  The superiority requirement is met because the Class Members have limited financial resources and are seeking a relatively modest recovery, and thus a class action is likely the only means by which they could practically adjudicate their claims.  It is also the method that is most likely to conserve judicial resources.  Accordingly, the Rule 23 requirements are met.

4.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a

settlement is substantively fair, Courts determine whether the settlement's terms are fair, reasonable, and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

5.      Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02-CV-8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

6.      "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, No. 07-CV-8623, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp*., No. 04-CV-3316, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10-CV-4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

**The Settlement Is Procedurally Fair**

7.      The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 184 (citing

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).  Here, the Settlement was reached after Class Counsel had conducted a thorough investigation and evaluation of the claims and after extensive arms-length negotiations between the parties.

8.      After the filing of the lawsuit, the Parties engaged in formal discovery by among other things, exchanging documents, interviewing and deposing potential witnesses, and deposing the Named Plaintiffs and Rule 36(b) Corporate witnesses concerning the Plaintiffs' duties, hours worked, and pay relating to the allegations in the Lawsuit.  Davis Decl. ¶¶ 13-20.

9.      Plaintiffs' counsel assisted with the preparation of the Complaints, the factual investigations of claims, the discovery requests and responses, and in preparing for settlement negotiations.  *Id.* ¶ 21.

10.     Plaintiffs' counsel also conducted legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to employee misclassification and overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendant's anticipated defenses, and Plaintiffs' damages.  *Id.* ¶ 22.

11.     From these sources, Class Counsel avers that it was able to evaluate the strengths and weaknesses of Plaintiffs' claims.  *See id.* ¶¶ 23-30.

12.     Class Counsel also avers that the aforementioned discovery conducted supports class certification.  *Id.* ¶ 28.

13.     While contested by Defendant, Plaintiffs' Counsel avers that its investigation revealed that Plaintiffs were subject to the same alleged unlawful practice, namely, that Defendant failed to properly pay them lawful overtime wages, for hours worked over forty (40) per week, based on the common practice of classifying them as overtime-exempt.  *Id.* ¶ 26.

14.     Similarly contested by Defendant, Plaintiffs' Counsel avers that its investigation revealed that Named Plaintiff Louis and the Class Members were subject to Defendant's alleged common policy of requiring them to work over forty hours per week, while failing to keep accurate records of time worked.[5]

15.     Plaintiffs' Counsel and the Named Plaintiffs identified the appropriate class as a result of investigation and discovery as to all individuals employed by Defendant as non-union, salaried, facility-based Assistant Managers, Assistant Supervisors, or Night Foremen, outside of California during the class period.  *Id.* ¶ 28.

16.     Following the September 18, 2013 pre-trial conference, the Parties expressed their interest in the potential to resolve the matter during a formal mediation.  *Id.* ¶ 11.

17.     In October 2013, the Parties entered into a Confidential Mediation Agreement.  *Id.* ¶ 12.

18.     Plaintiffs' Counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the Named Plaintiffs and Plaintiff Contant for the mediation, reviewing the necessary data for class-wide calculation of damages, and formulating a mediation demand.  *Id.* ¶ 31.

19.     On April 25, 2014, the Parties engaged in all-day mediation sessions under the direction of mediator, Ruth Raisfeld, Esq., a neutral and experienced class and collective action mediator.  *Id.* ¶ 32.

20.     At the mediation, the Parties were unable to reach an agreement; however, they agreed to continue settlement negotiations.  *Id.* ¶ 33.

---

[5] Defendant does not admit liability, nor does the Court make any finding as to liability.  *See* Davis Decl. ¶ 27.

21.     After additional settlement meetings between Counsel for both Parties and extensive arms-length discussions via phone, email and a second in-person settlement discussion, the Parties reached an agreement as to (a) the resolution of class claims for all non-union, salaried, facility-based Assistant Managers, Assistant Supervisors, or Night Foremen employed within six (6) years of the filing of the Complaint for the NY Settlement Class (anyone based out of Defendants' New York and New Jersey Facilities) and (b) the resolution of class claims for all non-union, salaried, facility-based Assistant Managers, Assistant Supervisors or Night Foremen employed within three (3) years of the filing of the Complaint for the Nation Wide FLSA Class (anyone based out of Defendant's Facilities outside of New York, New Jersey, and California). *Id.* ¶ 34.

22.     These arms-length negotiations involving counsel for the Parties and a neutral mediator well-versed in wage and hour law create a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Khait v. Whirlpool Corp.*, No. 06-CV-6381, 2010 WL 2025106 at *5 (E.D.N.Y. Jan. 20, 2010); *Clark*, 2010 WL 1948198 at *4.

23.     The Parties ultimately agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in the Parties' Joint Stipulation of Settlement and Release, executed August 8, 2014, between Plaintiffs and Defendant.  Davis Decl. ¶ 35.

**The Settlement Is Substantively Fair**

24.     The settlement is substantively fair.  All of the factors set forth in *Grinnell*, 495 F.2d at 463, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

25.     The "Grinnell factors" are: (1) the complexity, expense, and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

26.     Litigation through trial would be complex, expensive, and long.  Therefore, the first Grinnell factor weighs in favor of final approval.

27.     The Class Notice included an explanation of the allocation formula. *Id.* at Ex. 4.  The Class Notice also informed Class Members of their right to object, to include or exclude themselves from the settlements, and explained how to do so. *Id.*

28.     The Class's reaction to the settlement was positive and although the Class is not particularly large, Class participation rates are above average for a Claims-made settlement. *See* Davis Decl. ¶ 45; *see also* Salinas Decl. ¶ 13.  Thirteen Class Members submitted a Claim Form, which is approximately twenty-seven percent (27%) participation.  This participation rate is above the average for a claims-made settlement and thus supports final approval.  *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (finding the second Grinnell factor met because a 20% participation rate in a claims-made settlement was "well above average").  Additionally, there are no outstanding objections to the Settlement, and no Class Members requested exclusion.  Davis Decl. ¶¶ 33-37.  "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving settlement where thirteen out of 3,500 class members

13

objected and three opted out); *see also Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only seven of 2,025 class member submitted timely objections and only two requested exclusion).  Therefore, the second Grinnell factor weighs in favor of final approval.

29.     The parties have completed enough discovery to support settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).  Here, over the course of approximately two years prior to entering into settlement discussions, Plaintiffs obtained substantial discovery, including documentary evidence, witness testimony, and data to effectively determine Class Members' damages.  The third Grinnell factor weighs in favor of final approval.

30.     The risk of establishing liability and damages further weighs in favor of final approval.  "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  Here, the fact-intensive nature of Plaintiffs' claims and Defendant's defenses presents some risk.  The settlements eliminate this uncertainty.  The fourth and fifth Grinnell factors weigh in favor of final approval.

31.     The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval.  A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing.  Settlement eliminates the risk, expense, and delay inherent in this process.  The sixth Grinnell factor weighs in favor of final approval.

32.     The Defendant's ability to withstand a greater judgment is not clear.  The settlement substantially eliminated the risk of collection, as the Settlement Agreement identifies the method for payout of the Settlement Payment.  Moreover, even if protracted litigation were to yield a judgment larger than the Settlement Payment and although Defendant might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair."  *See In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 178 n. 9 (S.D.N.Y. 2000) (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 129) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.").  Accordingly, the seventh Grinnell factor is neutral and does not preclude final approval.

33.     The amount of the settlement weighs strongly in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  In this case, based on Plaintiffs' pre-settlement investigation, the Class Members will receive adequate compensation for the underpayment of wages under the terms of the Settlement Agreement.  The eighth and ninth Grinnell factors favor final approval.

**<u>Approval of the FLSA Settlement</u>**

34.     The Court hereby approves the FLSA settlement.

35.     The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7.

36.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Torres*, 2010 WL 5507892, at *6 (quotation marks omitted).  If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.  *Lynn's Food Stores*, 697 F.3d at 1354; *Clark,* 2010 WL 1948198, at *7.

37.     The Court finds that the FLSA settlement was the result of contested litigation and arms-length negotiation.

**<u>Dissemination of Notice</u>**

38.     Pursuant to the Preliminary Approval Orders, dated January 15, 2015 and January 28, 2015 (Dkt. Nos. 52 and 54), the Notices Packet was sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of a returned Notice Packet). Davis Decl. ¶¶ 43-45; *see also* Salinas Decl. ¶¶ 4-8.  The Court finds that the Class Notices fairly and adequately advised Class Members of the nature of the action, a description of the Class, the Class Members' right to exclude themselves from the settlement, and the right of all Class Members to object to the settlements, to be represented by counsel, and to appear at the fairness hearing.  Class Members were provided the best notice practicable under the circumstances.  The Court further finds that the Class Notice and distribution of such Class Notice comported with all constitutional requirements, including those of due process.

16

**Award of Fees and Costs to Class Counsel's Firm**

39.     On January 15, 2015, the Court appointed Christopher Q. Davis, of The Law Office of Christopher Davis, as Class Counsel because he and his firm met all of the requirements of Federal Rule of Civil Procedure 23(g).  *See* Dkt. No. 52.

40.     Class Counsel and the attorneys with the Firm, The Law Office of Christopher Q. Davis, PLLC, did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

41.     Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and is well-versed in wage and hour law and in class action law.  *See* Davis Decl. ¶¶ 47-66.

42.     The work that Class Counsel and his Firm have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources to prosecuting this case, negotiating a fair and reasonable settlement, and securing an above-average participation rate among the putative class and no objectors to the Settlement.

43.     The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel's Firm $140,000 in attorneys' fees or one-third of the Maximum Settlement Amount and reimbursement of Class Counsel's out-of-pocket expenses of $ 27,253.61.[6]

44.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit."  *See*

---

[6] As discussed above, Class Counsel and SGB have entered into an agreement regarding the distribution of fees and expenses awarded in this case.  Defendant does not object to this distribution pursuant to Class Counsel and SGB's agreement and to the Court's final decision regarding the distribution, provided that the amounts do not exceed the $140,000 in fees, the $27,523.61 in expenses (not inclusive of settlement administration costs which are to be paid directly from the Gross Settlement Fund), and the amounts provided for in the individual settlement agreements of Elvis Hibbert and Lacroix Contant, attached as Exhibit 2 and 3, respectively, to the Davis Decl.

*McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Diaz*, 2010 WL 5507912, at

\*7-8 (following percentage-of-the-fund method); *deMunecas v. Bold Food, LLC*, No. 09-CV-

440, 2010 WL 3322580, at \* 8-9 (S.D.N.Y. Aug. 23, 2010) (same); *Clark*, 2010 WL 1948198, at

\*8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08-CV-2494, 2009 WL 5841177, at \*4 (S.D.N.Y.

May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d

254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In*

*re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

45.     In wage and hour class action lawsuits, public policy favors a common fund

attorneys' fee award.  *See Frank*, 228 F.R.D. at 189.  Where relatively small claims can only be

prosecuted through aggregate litigation, "private attorneys general" play an important role.

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Attorneys who fill the private

attorney general role must be adequately compensated for their efforts.  If not, wage and hour

abuses would go without remedy because attorneys would be unwilling to take on the risk.

*Goldberger*, 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers

with sufficient incentive to bring common fund cases that serve the public interest").  Adequate

compensation for attorneys who protect wage and hour rights furthers the remedial purposes of

the FLSA and the NYLL.  *See Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir.

1975), *cert. denied*, 441 U.S. 944 (1979) (discussing remedial purpose of FLSA); *Ramos v.*

*Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y. 1984) (discussing remedial purpose of

NYLL); *Samiento v. World Yacht Inc*., 883 N.E.2d 990, 994 (N.Y. 2008) (discussing remedial

purpose of NYLL).

46.     Class Counsel's request for one-third of the Settlement Fund, is reasonable and

"consistent with the norms of class litigation in this circuit."  *Diaz*, 2010 WL 5507912, at \*7

(quoting *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05-CV-3452, 2008 WL 782596, at *5

(S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class

counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *8-

9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Duchene

v. Michael Cetta, Inc.*, No. 06-CV-4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009)

(awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v.

Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270, 2009 WL 5851465, at *5

(S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case);

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720S, 2008 WL 7630102, at *3 (W.D.N.Y. June

28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global

Tech. Co.*, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million);

*Cohen v. Apache Corp.*, No. 89-CV-76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993)

(awarding 33 1/3% of $7.75 million fund).

47.     Class Counsel risked time and effort and advanced costs and expenses, with no

ultimate guarantee of compensation.  When employing the percentage of the fund method, courts

frequently use the lodestar method as a cross check.  *See Goldberger*, 209 F.3d at 50; *Beckman v.

KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).  A percentage-of-recovery fee award of

one-third, or 33.3%, amounts to less than Class Counsel's lodestar.  After examining the billing

records submitted by Class Counsel, the Court has determined that an alternative calculation of

fees confirms that the 33.3% award is reasonable under the circumstances.  While the Court

disagrees with Class Counsel's assertion that the lodestar is approximately $350,805.00—which

would make the $140,000.00 in fees .399 times the lodestar—an adjusted lodestar is nevertheless

less than the requested one-third fee award.  *See* Davis Fee Decl. ¶ 8.[7]  Even applying more

modest billing rates of $350 per hour for partner work, $175 per hour for associate work, and

$100 per hour for law clerk work[8]; discounting the entirety of the billing records submitted after

Class Counsel formed its own law firm[9]; and discounting each attorneys' hours by one-third[10];

the lodestar would be $148,357.50.  Based on this check, the lodestar multiplier is still less than

one.  *See Beckman*, 293 F.R.D. at 481-82 (collecting cases approving multipliers of up to eight

times the lodestar).  Additionally, Class Counsel has provided documentation of 1,187.1 attorney

and staff hours that were not included in their lodestar calculation.  *See* Dkt. No. 75-1.  That

these hours—even if inflated to some degree—were already discounted also militates in favor of

the reasonableness of the overall award.  Accordingly, the Court finds that the one-third fee

award is appropriate under the facts of this case.

---

[7] "Davis Fee Decl." refers to the Declaration of Christopher Q. Davis in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses.  Dkt. No. 72.

[8] While courts do approve higher rates, typical rates for FLSA cases range from $300/hour to $400/hour for partners and $175/hour to $250/hour for associates.  *See McGlone v. Contract Callers Inc.*, No. 11-CV-3004, 2015 WL 7695145, at *3 (S.D.N.Y. Nov. 29, 2015); *Run Guo Zhang v. Lin Kumo Japanese Restaurant Inc.*, No. 13-CV-6667, 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344, 2015 WL 3536593, at *2 n.16 (S.D.N.Y. June 5, 2015); *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Grp.*, No. 13-CV-3061, 2014 WL 2624759, at *7 (S.D.N.Y. June 10, 2014).  Because it is not entirely clear whether Megan Dubatowka was working as an attorney or in some other role, for purposes of a cross-check calculation, she has been counted as a law clerk and assigned a rate of $100/hour.  *See, e.g.*, *Magnuson v. Newman*, No. 10-CV-6211, 2014 WL 3767006, at *4 (S.D.N.Y. July 31, 2014) (finding rate of $150/hour reasonable for a law clerk and $100/hour reasonable for a paralegal).

[9] These records undoubtedly represent at least some legitimate and necessary work on this case—the Court does not doubt that Class Counsel spent time preparing the class action approval papers and overseeing the settlement process.  *See* Dkt. No. 72-1.  However, while the records indicate the rate at which each entry was billed (ranging from $100/hour to $600/hour), they do not indicate who the entries belong to and thus the Court cannot assess whether the rates and/or task descriptions are appropriate.  Accordingly, the Court has not considered the $29,685.00 in invoices from the period of July 31, 2014 to November 20, 2015 in its analysis.

[10] The billing records show 434.7 partner hours, primarily from Christopher Davis; 208.4 hours from associate Rachel Haskell; and 339.3 hours for Megan Dubatowka.  *See* Davis Fee Decl. Ex. B.  While some entries are vague or appear to be duplicative, the billing records largely reflect the type of work that would be expected on a nationwide class action wage case such as this one.  Moreover, as Class Counsel observed during the fairness hearing, discovery was fairly extensive for a case of this nature and size.  Class Counsel would have expended considerable resources during that process, accounting for in part, the reported attorney hours.  Having said that, the Court finds it appropriate for purposes of this analysis to discount the attorney hours by one-third, yielding 289.8 total partner hours, 138.9 total associate hours, and 226.2 law clerk hours.

48.     All of the factors in *Goldberger*, 209 F.3d at 50, weigh in favor of a fee award of one-third (1/3) of the Settlement Amount.

49.     Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'" *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (citing and quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir. 2007)).

50.     The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement also supports the fee request.  *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

### **Conclusion**

51.     "Final Approval" of the Settlement or the "Effective Date" shall be the first date after all of the following events and conditions have been met or have occurred: (1) the Court entered a Preliminary Approval Order; (2) the Bar Date has passed; (3) the Court entered a Final Approval Order; (4) the deadline has passed without action for counsel for the Parties to terminate the Settlement Agreement; and (5) the time to appeal from the Final Approval Order has expired and no Notice of Appeal has been filed or in the event that an appeal is filed, the appellate process is exhausted and the Final Approval Order has remained intact in all material respects.  *See* Settlement Agreement ¶ II(19).

52.     Defendants shall deliver all payments due under the Settlement Agreement to the

Claims Administrator within ten (10) calendar days of the Final Effective Date.  *Id.* ¶ III(C)14.

53.     Subject to and in accordance with the Settlement Agreement, within forty-five (45) days of the Final Effective Date, the Claims Administrator shall mail all settlement payments to Authorized Claimants to the address provided on his or her Claim Form.  *Id.* ¶ III(C)15.

54.     Deductions for the Participating Class Members' share of federal, state and local income tax withholding and the employee share of the FICA tax will be made according to the Settlement Agreement. *Id.* ¶ III(C)14.

55.     This action shall be and hereby is dismissed on the merits with prejudice, and all Class Members and Collective Action Class Members who failed to timely opt-out of the settlement shall be and are permanently barred from prosecuting against the Released Persons (as defined in the Settlement Agreement at Section II(37)) any and all claims, liabilities, demands or causes of action, known or unknown, that he/she may have against the Released Parties arising out of the performance of labor or service as an employee for any reason associated with their employment, whether pursuant to any written or oral contract, written or oral promise or other understanding, or pursuant to any federal, state, or local rule, regulation or law, concerning wages and hours, including without limitation claims under the FLSA and NYLL, arising up to and including the January 15, 2015, the date of the Order approving the Motion for Preliminary Approval was entered, as well as all claims that were or could have been brought in this action.

56.     Though the Court retains jurisdiction over this action for the purpose of enforcing the

Settlement Agreement, the judgment is a Final Judgment in accordance with the Settlement

Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

**SO ORDERED**:

Vernon S. Broderick   1/6/2016
United States District Judge